Parker, J.
Error is prosecuted to reverse judgment below. Gorman Brothers, here defendants in error, were the plaintiffs below. Plaintiff in error here was the defendant below. The plaintiffs below in their petition sot forth that they are a partnership doing business under the laws of Ohio; that the defendant is a religious society, duly and regularly incorporated under the laws of the state of Ohio, and that on or about the — ■ *11 ••day of October, 1897, the plaintiffs made and entered into a verbal contract with the Smead Furnace & Foundry Company (which was at that time, under and by virtue of a valid •contract, engaged as principal contractor of the defendant in erecting and constructing a heating and ventilating apparatus for a building known as the St. Paul’s Methodist "Church building, located at the corner of Thirteenth and Madison streets in the city of Toledo, Ohio, for the defendant, the owner thereof), by which it was stipulated and agreed between the said the Smead Furnace & Foundry Company as principal contractor,and plaintiffs,that plaintiffs should do all the brick work and masonry, and furnish all the material necessary in the construction and placing of said heating and ventilating apparatus in said church building, for which work said the Smead Furnace & Foundry Company was to pay said plaintiffs a reasonable compensation. Plaintiffs say that they at once entered upon said work, and completed the same on or about the — day of May, 1898. That nothing was paid to the plaintiffs by the •said the Smead Foundry & Furnace Company during the progress of said work, and that said work and material was reasonably worth $587.96. The plaintiffs then set forth that some time in May, 1898, they filed with the defendant, the owner of said building, a sworn statement of their contract and of the labor performed and material furnished under said contract, together with an itemized statement of ■the value thereof, at which time there was due from the defendant to the said Smead Furnace & Foundry Company as .principal contractor upon its contract with said defendant, the sum of $2,000, and the defendant has not paid the claim of the plaintiffs, or any part thereof.
Also that due notice of the filing of said claim had been served upon the defendant the Smead Furnace & Foundry Company, as provided by law, and they pray for judgment •against the defendant below for the amount of the claim.
*12 To this petition an answer was filed, containing what are designated a first defense and a second defense. To this second defense the plaintiffs filed a demurrer, which was sustained. Thereupon the defendant withdrew its first defense,and, declining to plead further, judgment was entered upon the pleadings in accordance with the prayer of the petition. The sole question presented here is whether the second defense stated facts sufficient to constitute a valid defense.
Now, this second defense cannot be stated more clearly or sufficiently, perhaps, than by reading it:
“Second. Said defendant, further answering, says that on the — day of May, 1897, the defendant entered into a written contract with the Smead Furnace & Foundry Company, for the construction of a heating and ventilating apparatus in the church building owned by said defendant at the corner of Madison and Thirteenth streets, Toledo, Ohio. That thereafter, to-wit, on the 27th day of May, 1897, the Smead Furnace & Foundry Company borrowed the sum of $2,700 from the Merchants & Clerks Savings Bank of Toledo, Ohio, for the purpose of obtaining funds to construct said heating and ventilating apparatus, and executed and delivered to said bank its note for said money so borrowed, and at the same time assigned and transferred the contract of said defendant with the said Smead Furnace & Foundry Company to said bank as collateral security for said loan. That said note to said bank was endorsed by Clayton W. Everett and E, W. Tolerton at the time of its execution. That soon thereafter the said company entered upon the construction of said heating and ventilating apparatus, and proceeded to fulfill its contract with said defendant until on or about the 23d day of April, 1898, when the said company was unable, on account of financial inability, to proceed to carry on said work and complete said contract, and thereupon, and on the day aforesaid, the said company sold, assigned and transferred the said contract to said Clayton W. Everett and E. W. Tolerton, who proceeded to and did complete the construction of said heating and ventilating apparatus according to said contract. That said defendant was notified by said Everett and Tolerton that they *13 were the owners of said contract and would complete said work, and that they had paid the.Smead Furnace & Foundry ■ Company in full therefor; and thereupon the said Everett and Tolerton caused said contract to be completed by the ■ finishing of said work, and demanded payment of the balance due from said defendant upon its said contract. That ; said defendant had no notice from the said plaintiffs that they were doing said work as sub-contractors for said com- ■ pany,or that anything was due them thereon, until said itemized statement was filed with said defendant some time in , the month of May, 1898. That prior thereto, said defendant had been notified by said Everett and Tolerton that they ■ were the owners of said contract, and that the Smead Furnace & Foundry Company had been fully paid,and that the • balance of the money owing by said defendant upon said contract should be paid to the said Everett and Tolerton. That thereafter, to-wit, on the 14th day of July, 1898, the • said defendant paid to the said Everett and Tolerton the ■ sum of $2,026, that being the balance due by said defendant upon said contract for the construction of said heating and ventilating apparatus. The defendant therefore denies - that it is indebted to the said plaintiffs in any sum whatever, and also denies that said plaintiffs are entitled to a • lien, and asks that said petition may be dismissed.”
It is a'rgued on behalf of plaintiff in error that some ■ equitable rights accrued to Everett and Tolerton in consequence of their having become the indorsers for the sum ., furnished to the Furnace & Foundry Company by the bank, and that such rights as they acquired the defendant church acquired, and that the church may set it up defensively. It is not averred, however, in this answer that Everett and Tolerton have been required to pay, or have paid anything, or suffered any loss in consequence of this indorsement, and therefore no further attention will be given to what has . been urged upon that score. Everett and Tolerton became simply the transferees or assignees of the contract of the Smead Furnace & Foundry Company; and, according to our view of the law, they in effect stepped into the shoes of *14 «•’that company, acquired whatever rights the company had • under the contract, and became subject to the liabilities of ! the company to sub-contractors and material men, as provided by the statute. The statute on that subject, section • 3203, provides:
“ * * * An assignment or transfer by such head contractor, of his contract with the owner, as well as all .proceedings in attachment, or otherwise, against such head contractor to subject or incumber hi3 interest in such contract, shall save and be subject to the claims of every laborer, mechanic, sub-contractor or material maD who has furnished any labor, machinery, or material, towards the construction, alteration, removal or repair of any property designated in this chapter.”
That is a part of the mechanic’s lien law.
It will be observed that the assignment to .Everett and Tolerton was made after the contractor had entered upon the performance of his work, and after the sub-contract had been let and the sub-contractor had been engaged upon the work for some months, Whether he had entirely finished the work at the time Everett and Tolerton became the assignees under this contract, is not clear from the record,or if not finished, how far the work had progressed; but that the sub-contractor had begun it, and that the work had pro-grossed somewhat, is clear. We hold therefore, that Everett and Tolerton became the transferees under such circumstances as that they took subject to the liabilities of head contractor to the sub-contractor, and that therethe payment by the church to Everett and Tolertoh does not relieve them or exonerate them from their liability to the sub-contractor.
Our attention is called to the case of Stark v. Simmons, Ohio St., 435, which plaintiff in error urges is applicable, but we cannot see that it is. In that case the work "had been substantially paid for by the owner before it wbegun. The owner had purchased a claim against the con *15 tractor, which amounted to as much as he was bound to pay the contractor for the work before he entered into the contract with him, and under such circumstances it was held that this payment, or this manner of payment, by the owner, gave him a right superior to that of the sub-contractor. But, if the mere assignment by a head contractor could cut off the rights of a sub-contractor, then it would be easy to defeat the object of the statute, which is to protect the sub-contractor and material men; a mere straw man could enter into a contract and at once assign the contract to another, and that other failing to discharge the obligations of his assignor to the sub-contráctors and' material men, the object of the statute would be defeated.
E. W. Tolerton, for Plaintiff in Error.
George B, Boone, for Defendant in Error,
We think the case comes within the section of the statute to which I have referred, and we therefore hold that there was no error on the part of the court in sustaining the demurrer to the second defense, and the judgment will be affirmed.